UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x
                              :
UNITED STATES OF AMERICA
                              :
            - v. -                        11 Cr. 411 (SAS)
                              :
ABDOU AMADOU WATARA,
                              :

            Defendant.        :

- - - - - - - - - - - - - - - x


**GOVERNMENT'S MOTIONS IN LIMINE**




                    PREET BHARARA
                    United States Attorney for the
                    Southern District of New York,
                    Attorney for the United States
                        of America


SANTOSH ARAVIND
Assistant United States Attorney
        - Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x
                               :
UNITED STATES OF AMERICA
                               :
          - v. -                        11 Cr. 411 (SAS)
                               :
ABDOU AMADOU WATARA,
                               :
          Defendant.
                               :
- - - - - - - - - - - - - - - x
```

## GOVERNMENT'S MOTIONS IN LIMINE

The Government respectfully submits this memorandum of law to seek the following rulings _in_ _limine_.  First, while the Indictment charges that the bank fraud conspiracy existed from in or about October 2008 through in or about July 2010, the Government respectfully seeks to introduce at trial evidence that the defendant engaged in a fraudulent scheme to alter checks which he deposited into bank accounts from in or about July 2008 through in or about December 2008.  The Government submits that such evidence is direct proof of the offense charged, or, alternatively, that such evidence is admissible under Rule 404(b).  Second, the Government respectfully seeks to preclude cross-examination of Government cooperating witness Ousmane Hamadou, a/k/a "Papa," concerning two arrests in 2000 and 2001 as such cross-examination would not be probative of the witness' truthfulness, and would be harassing and embarrassing to the witness, unfairly prejudicial to the Government, and distracting to the jury.  For the reasons set

forth below, the Court should grant the Government's applications.

**BACKGROUND**

On May 11, 2011, a grand jury in this district returned a one-count indictment charging the defendant with conspiring with others to commit bank fraud.  This conspiracy is alleged to have taken place from in or about October 2008 to in or about July 2010.

At trial, the Government expects the evidence will show that the conspiracy to which the defendant belonged used several methods to defraud financial institutions: Those methods included altering checks and obtaining stolen checks from companies and educational institutions, depositing those checks into fake business or personal bank accounts, and withdrawing money from those accounts.  Specifically, the Government expects that evidence will show that (1) from July 2008 through November 2008, the defendant opened a number of bank accounts at TD Bank, Wachovia Bank, Bank of America, and other financial institutions, in his own name and in the name of "Success Factors"; (2) from in or about July 2008 through in or about December 2008, the defendant deposited stolen or altered checks into those accounts, including a stolen check in an amount of $266,750.00 from Kaplan, Inc., to Success Factors, a company located in California; (3) after depositing the stolen or altered checks, the defendant withdrew or attempted to withdraw money from these accounts and split the proceeds among himself and other members of the conspiracy; and (4)

from in or about December 2008 through in or about October 2009, the defendant identified banks for other members of the conspiracy to deposit stolen and altered checks, accompanied those members to the banks that he identified, and received a share of the proceeds after members withdrew money from those accounts.

Trial of this matter is set to begin on August 8, 2011, before the Court and a jury.

**ARGUMENT**

**I.   The Government Should Be Permitted To Introduce Certain Evidence As Direct Proof Of The Offense Or Alternatively, Under Federal Rule of Evidence 404(b).**

The Government seeks to introduce evidence that in or about July 2008, the defendant received a United States Treasury check representing a tax rebate, and then met with Michael LNU, a co-conspirator, who altered the amount on the rebate check.  After depositing the altered check into a bank account, the defendant received proceeds of the check, which he split among Michael LNU, and Government cooperating witness Ousmane Hamadou, a/k/a "Papa," who introduced the defendant to Michael LNU.  The Government also seeks to introduce evidence that in or about July 2008, the defendant opened a personal bank account in his own name at TD Bank, and deposited into that account a stolen check in the amount of $30,000 and payable to Watara, that been fraudulently altered by Michael LNU.  The Government respectfully submits that this evidence is direct proof of the offense and that, even if it were

not, it would be admissible under Rule 404(b).

In order to prove the bank fraud conspiracy charged in the Indictment, the Government must establish that a conspiracy existed and that the defendant knowingly and willfully became a member of that conspiracy.  Here, the evidence subject to this motion is that the defendant (1) received a U.S. Treasury check and fraudulently altered that check to increase the payment amount from the U.S. Treasury; and (2) altered a check from Capitol One.  In each case, the defendant contacted Hamadou to arrange with Michael LNU, a member of the conspiracy who altered checks.  The Government further expects that Hamadou will testify that the defendant contacted him because of Hamadou's connections to Michael LNU.  In addition, the evidence will include the altered check made payable to the defendant from Capitol One.[1]  The Government submits that such evidence is probative of the defendant's willful involvement in the charged bank fraud scheme.  The evidence that the defendant obtained altered checks, which he then deposited, helps establish that the defendant was a knowing and willful member of that conspiracy.  See United States v. Brady, 26 F.3d 282, 287 (2d Cir. 1994) (evidence that "tends to prove or actually does prove" an element of a charged offense is direct evidence and not "other bad act" evidence under Rule 404(b)); see also United States v.

---

[1]The Government is in the process of locating and obtaining a copy of the tax rebate check.

Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (quoting United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997)) (evidence "is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense . . . or if it is necessary to complete the story of the crime on trial.")

The fact that such conduct occurred in or about July 2008 - before the conspiracy identified in the Indictment allegedly began in or about October 2008 - does not invalidate the probative nature of the evidence. "[A]n indictment date only needs to be substantially similar to the date established at trial." United States v. Teague, 93 F.3d 81, 84 (2d Cir. 1996). "[S]ignificant flexibility in proof," is permissible "provided that the defendant was given notice of the core of criminality to be proven at trial." United States v. Heimann, 705 F.2d 662, 666 (2d Cir. 1983). Furthermore, the Second Circuit has stated that "[p]articularly with respect to allegations of time, we have permitted proof to vary from the indictment provided that the proof fell within the period charged." Id. This is especially true where, as here, time is not an element of the charged offense. See id. at 669. Thus, the fact that such conduct occurred outside the scope of the conspiracy (as defined in the Indictment) should not preclude the evidence of the altered check scheme.

In the alternative, evidence of the defendant's involved

5

in bank fraud is admissible under Rule 404(b) to prove the defendant's "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged." United States v. Pascarella, 84 F.3d 61, 69 (2d Cir. 1996)) (quoting United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993)).  The use of altered checks strongly suggests that the defendant was well aware of the fraudulent objective of the charged conspiracy.  See generally United States v. Pipola, 83 F.3d 556, 565 (2d Cir. 1996) (Second Circuit's "inclusionary interpretation of the rule allows evidence of other wrongs to be admitted so long as it is relevant and it is not offered to prove criminal propensity").

     The Second Circuit has consistently recognized that evidence of the defendant's involvement in prior, similar crimes is not only probative of his intent, but where, as anticipated here, the defendant claims his conduct has an innocent explanation, the admission of such evidence of prior acts is particularly appropriate.  See, e.g., United States v. Gordon, 987 F.2d 902, 908-09 (2d Cir. 1993) ("Evidence that the defendant had a prior conviction for nearly identical counterfeiting activity was admissible to rebut his claim that he had not known that he

6

received counterfeit money."); <u>United States</u> v. <u>Caputo</u>, 808 F.2d 963, 968 (2d Cir. 1987) (allowing "evidence of appellants' involvement with previous credit card schemes" because it was "probative of their intent in possessing the 'access devices' for which they were charged").

Evidence of this scheme should not be excluded under Rule 403. First, there is no danger of unfair prejudice as the proffered fraudulent conduct is no more inflammatory than the charged conduct. <u>See</u> <u>United States</u> v. <u>Williams</u>, 205 F.3d 23, 34 (2d Cir. 2000); <u>United States</u> v. <u>Pitre</u>, 960 F.2d 1112, 1120 (2d Cir. 1992) (Rule 403 did not preclude evidence of prior narcotics transactions that "did not involve conduct any more sensational or disturbing" than the charged crime) (citation omitted). Second, the proposed Rule 404(b) evidence would not lengthen the trial in any significant way. The Government expects to prove the defendant's participation in this scheme through the testimony of bank witnesses and cooperating witnesses. The introduction of this evidence would be relatively brief. Thus, there is no danger that the jury would be overwhelmed or confused by additional evidence. Moreover, any possible prejudice may be addressed by a limiting instruction from the Court on the proper consideration of Rule 404(b) evidence. <u>See</u> <u>Watkins</u> v. <u>Sowders</u>, 449 U.S. 341, 347 (1981) (describing a "presumption that juries will follow instructions"); <u>United States</u> v. <u>Ebner</u>, 782 F.2d 1120, 1126 (2d Cir. 1986)

7

("[L]imiting instructions are an accepted part of our present trial system, and consequently there is a presumption that juries will follow them.") (internal quotations and citations omitted).

## II.  The Court Should Preclude Cross-Examination About Cooperating Witness Ousmane Hamadou's Prior Arrests

Ousmane Hamadou, a/k/a "Papa," is a cooperating witness for the Government who will testify that, among other things, he provided the defendant with stolen or altered checks which the defendant deposited into bank accounts in the New Haven area.

The Government seeks to preclude cross-examination of Hamadou regarding his two prior arrests and the conduct underlying those arrests.[2]   First, while Hamadou was living in Denver, Colorado, he was arrested on May 23, 2000, for sexual assault in the first degree.  Hamadou denies committing this assault and the case was ultimately dismissed by the District Attorney's office in Denver.   The Government has confirmed with the Denver District Attorney's office that the case was dismissed after the victim became unwilling to cooperate with the prosecution.  Hamadou spent approximately one month in jail before the case was dismissed.

In addition, on or about February 16, 2001, Hamadou was arrested after committing a hit-and-run accident and failing to the report the accident.   That case was closed in 2007.    After

---

[2]The Government has requested records of the disposition of these two cases from the Denver District Attorney's Office, and will provide such records to defense counsel when they are received.

contacting the Denver District Attorney's office, the Government has confirmed that the case is closed and the defendant was charged after he hit an unattended vehicle.   Hamadou himself acknowledges that he was driving under the influence of alcohol and was later arrested.

Cross-examination of Hamadou about these two arrests and the conduct underlying these arrests should be precluded.   While it is unclear whether defense counsel intends to pursue questioning of Hamadou on these subjects, or offer extrinsic evidence relating to the sexual assault and/or hit and run arrests, the Government moves in limine to preclude any such questioning or evidence as inflammatory, prejudicial, irrelevant to Hamadou's veracity, and barred by the Federal Rules of Evidence.

As an initial matter, these ten-year old arrests have no bearing on Hamadou's veracity because they do not involve crimes of dishonesty, and cross-examination about them should be precluded. See United States v. Flaherty, 295 F.3d 182, 190-91 (2d Cir. 2002) (excluding cross-examination of cooperating witness about a murder because "murder generally is not a crime of dishonesty, and nothing about the [murder] suggested that it would in any way reflect on [the witness's] truthfulness."); United States v. Puco, 453 F.2d 539, 543 (old narcotics conviction not probative of witness's truthfulness); see also United States v. Agostini, 280 F. Supp. 2d 260, 261-262 (S.D.N.Y. 2003)(precluding cross-examination regarding

witness' prior assault arrest as insufficiently probative of the witness' veracity).

Any attempt by defense counsel to cross-examine Hamadou about these incidents and arrests would be for a singular and highly inflammatory purpose – to prejudice the jury against Hamadou and thereby prejudice the Government's case.  It would also distract the jury from the issues on trial.  The fact that no conviction resulted from these arrests further highlights the prejudicial nature of such evidence.  As such, cross-examination of Hamadou about a sexual assault charge and charge related to the hit-and-run incident that were subsequently dismissed should be barred under Federal Rules of Evidence 608(b) and 611.

With respect to the defendant's sexual assault arrest, the Second Circuit and courts in this district have consistently held that allegations concerning a witness's sexual misconduct generally have no bearing on credibility and may be properly excluded as a ground for cross-examination.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Rosa</u>, 11 F.3d 316, 336 (2d Cir. 1993) ("Nor was it an abuse of discretion to exclude evidence of certain types of acts such as rape and burglary as having an insufficient bearing on the witness's credibility); <u>United States</u> v. <u>Calderon-Urbina</u>, 756 F. Supp. 2d 566, 570 (S.D.N.Y. 2010) (precluding cross-examination of confidential informant's nine year-old rape arrest, which was dismissed, as irrelevant to issue of credibility and as

inflammatory to the jury).  Moreover, Rule 608(b) bars defense counsel from trying to prove a "specific instance" of Hamadou's alleged misconduct conduct by extrinsic evidence, such as by calling a witness to offer testimony.  See F.R.E. 608(b). Accordingly, defense counsel should be precluded from cross-examining Hamadou about the charge that Hamadou sexually assaulted a woman in 2000, or from seeking to introduce extrinsic evidence on that subject.

Similarly, cross-examination of Hamadou relating to the arrest for a hit-and-run accident and failure to report the accident should similarly be precluded.  This arrest, which took place on February 16, 2001, has no bearing on the defendant's veracity or on any of the issues at trial.  See, e.g., United States v. Whitley, No. 04 Cr. 1381 (RCC), 2005 WL 2105535, at *3 (S.D.N.Y.  Aug.  31,  2005) (precluding cross-examination of Government witness with drunk driving conviction when conviction "did not stem from intoxication" during the relevant time period and "has no bearing" on whether witness perceived a robbery as it was happening.)  Accordingly, the defendant should be precluded from cross-examining Hamadou regarding these two arrests.

**CONCLUSION**

For the reasons set forth above, the Government respectfully submits that the Court should grant the Government's motions in limine.

Dated:      New York, New York
            August 3, 2011

                         Respectfully submitted,

                         PREET BHARARA
                         United States Attorney
                         Southern District of New York


                 By:  _____/S/_____
                         SANTOSH ARAVIND
                         Assistant  United  States  Attorney
                         (212) 637-1045

12

## <u>AFFIRMATION OF SERVICE</u>

SANTOSH ARAVIND, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

That he is an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York; and

That on August 3, 2011, he caused a copy of the attached Government's Motion in Limine to be delivered by email and ECF to:

Thomas Nooter, Esq.
Freeman, Nooter & Ginsberg
30 Vesey Street, Suite 100
New York, NY 10007

I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. Section 1746.

Dated:   New York, New York
         August 3, 2011

```
         /S/
```
SANTOSH ARAVIND
Assistant United States Attorney
(212) 637-1045